## Wytheville.

## MASONIC TEMPLE ASSOCIATION *v.* BANKS.

### June 24, 1897.

1. CHANCERY JURISDICTION—*Injunction—Nuisance—Irreparable injury—Public works.*—Courts of equity have jurisdiction to restrain by injunction the commission or continuance of a nuisance which is likely to produce irreparable injury ; and the injury is irreparable if it is a grievous one, or a material one and not adequately reparable in damages. It is no answer to say that the owner of property may ward off the evil effects and consequences of a nuisance at his own expense. A court of equity will enjoin its continuance, especially if it be a matter likely to affect health. The public nature of the work which creates the nuisance does not prevent a court of equity from enjoining the contractor from doing it in such manner as to create a nuisance, especially when it appears that it might be safely done in another manner at a small additional expense to the contractor. Obstructing a stream so as to cause it to flood the cellar of another is a nuisance.

Appeal from a decree of the Corporation Court of the city of Roanoke, pronounced June 1, 1895, in a suit in chancery wherein the appellant was the complainant, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*A. L. Payne* and *L. H. Cocke,* for the appellant.

*Scott & Staples* and *J. R. Bryan,* for the appellee.

RIELY, J., delivered the opinion of the court.

The appellant, which was the complainant in the court below, is the owner of a large brick building on the corner of

Jefferson and Campbell streets in the city of Roanoke. The building is three stories in height above the level of the streets and contains a number of store-rooms and offices, which are occupied by numerous persons as tenants of the complainant. Underneath the building are a basement and large cellars, in which are situated the furnace and apparatus for heating the building, and in which coal and other articles are stored.

The appellee, who was the defendant in the court below, in doing certain work for which he had contracted with the city, erected a dam across Trout Run, a stream of water that flows through the city and past the building of the complainant, and thereby obstructed the natural flow of the water, and caused it to overflow and flood the cellars of the complainant's building.

The complainant presented its bill for an injunction to restrain the defendant from keeping and maintaining the dam across Trout Run, upon the ground that it created a nuisance that was both injurious to its property, and dangerous to the health of the occupants. The court awarded the injunction, but at the hearing dissolved it.

The principle invoked by the complainant cannot be questioned. The jurisdiction of a court of equity to restrain by an injunction the creation or continuance of a nuisance, which is likely to produce irreparable injury, is well established and constantly exercised. The jurisdiction is of great utility. Indeed, without it, persons would suffer, in many cases, the greatest wrongs, for which actions at law would afford them no adequate redress. *Miller* v. *Trueheart et als,* 4 Leigh 569; *Pruner & Huffles* v. *Pendleton et als,* 75 Va. 516; and *Sanderlin* v. *Baxter,* 76 Va. 299.

"When the right is clear and the nuisance established," it is said by a learned author, "a court of equity will always interfere if the nuisance results from an unlawful act, is continuous in its nature, or, if only temporary, if it is not ade-

quately compensable in damages." Wood on Nuisances (3d ed.), sec. 809.

It is not proposed, nor is it necessary, to discuss minutely the testimony. It is sufficient to advert to certain facts established by it.

The right of the complainant and the erection of the dam by the defendant were not disputed: and it was clearly shown that the basement and cellars of the complainant's building were flooded with water as the result of the erection of the dam. The act of the defendant in obstructing the stream and causing the water to overflow the premises of the complainant was unlawful and constituted a nuisance. 1 Wood on Nuisances, secs. 1 and 117; *Burwell* v. *Hobson*, 12 Gratt. 322; *Amick* v. *Tharp*, 13 Gratt. 564; and *N. & W. R. R. Co.* v. *Carter*, 91 Va. 587.

Was the injury done or reasonably apprehended irreparable? "By the term 'irreparable injury,' it is not meant that there must be no physical possibility of repairing the injury. All that is meant is that the injury would be a grievous one, or at least a material one, and not adequately reparable in damages." *Sanderlin* v. *Baxter*, 76 Va. 299, 306.

In addition to the injury done to the property of the complainant, it was shown that the water of Trout Run is impregnated with filth and refuse matter, and when stagnant, which is the necessary result when its flow is obstructed, and when standing in cellars, produces disease. This was testified to in behalf of the complainant by a number of persons, and among them several physicians, two of whom were members of the board of health of the city, and one of them its president, both of whom stated that they objected to any obstruction of the stream on account of the danger therefrom to the health of the public.

It was further shown that the obstruction of the stream by the dam and consequent stagnation of the water had already rendered the same offensive, and caused the emission of most

disagreeable odors, which penetrated the rooms of the building, causing discomfort to the occupants, and reasonably creating a grave apprehension of danger to their health from serious disease.

There was testimony in behalf of the defendant apparently contradictory of this in some respects, but when examined, it will appear that it is mainly of a suppositional and negative character. It was based upon the supposition that the work contracted for by the defendant was necessary to be done, that it could not be executed without great expense, except by damming Trout Run, and that the necessity for the dam, according to the contention of the defendant, would only continue four or five days. Upon this hypothesis, it was testified for the defendant, some of the witnesses being physicians, that the obstruction of the stream for that space of time was not likely to produce disease and cause injury to the health of the tenants of the building, if any water which flowed into the cellars was regularly pumped out and disinfectants thereafter used, but that even then there was a possibility of danger.

In reply to this, it was shown that the work could be done without obstructing the stream by the adoption of a different plan that would add very little to the expense; and further, that at the rate the defendant had progressed with the work, it would take several weeks, if not two or three months, for him to finish it.

We know of no rule or principle of law that would exempt from equitable interference one who creates a nuisance on the premises of another, which injures his property and is pernicious to health, and allow him to continue it for an indefinite period, because the latter may possibly ward off the evil effects and dangerous results at his own cost and expense. The law tolerates no experiments made at the risk of human life. In the light of the testimony in this case, it would be a dan-

gerous experiment to allow a continuance of the nuisance complained of.

We are of opinion that the Hustings Court erred in dissolving the injunction.    It should have been perpetuated, and it will be so ordered.

*Reversed.*