## Richmond.

### W. L. BRAGG, ET ALS. v. CLAUDE J. IVES.

#### December 22, 1927.

1. APPEAL AND ERROR—*Record—Order Dissolving Temporary Injunction—Dismissal of Bill.*—Where the record in a suit for an injunction consisted solely of the bill, demurrer, order of court granting a temporary injunction and an order dissolving the temporary injunction, the only question presented upon appeal is whether the allegations of the bill are sufficient in law to entitle complainants to the relief prayed for.

2. BILL IN EQUITY—*Demurrer—Allegations of Bill Taken as True.*—For the purposes of demurrer the allegations of a bill seeking an injunction must be taken as true.

3. NUISANCES—*Undertaking Establishment.*—An undertaking establishment is not a nuisance *per se.*

4. NUISANCES—*Undertaking Establishment—Residential Community—General Rule.*—An undertaking establishment located in a residential community which subjects the near-by residents to the annoyance of noxious odors, gases, and the like, to the extent of rendering their homes physically uncomfortable, or which exposes the occupants of such homes to danger of contagion and disease, is a nuisance which a court of equity will enjoin.

5. NUISANCES—*Undertaking Establishment—Mere Intrusion into Residential Community.*—The question of whether or not the intrusion of an undertaking establishment and morgue into an exclusively residential community, when accompanied by a resulting material depreciation in the value of adjacent property, constitutes a legal nuisance depends upon the facts and circumstances of each particular case.

6. NUISANCES—*Undertaking Establishment—Intrusion into Residential Community.*—When an undertaking establishment invades a community which has previously been strictly residential, and the character of the business or the manner in which it is conducted, is such as will naturally depress the spirits and sensibilities of those living in close proximity to it, to the extent of weakening their power to resist disease and destroys the comfort, repose and enjoyment of their homes, making them less desirable and thereby materially depreciating their value, then such business is a nuisance to those so affected by it.

7. NUISANCES—*Undertaking Establishment—Intrusion into Residential Community.*—In order that the intrusion of an undertaking establishment into an exclusively residential community may constitute a nuisance, the objection to the business must be something more than imaginary, or an individual aversion to the proximity of the establishment and to the thought of death superinduced by its nearness and the activities carried on in connection with it. The annoyance complained of must be something real, substantial and tangible—one that affects the normal person, not the over-nervous or supersensitive, nor yet the hardened and stoical, but the ordinary man, with ordinary sensibilities, tastes and feelings.

8. NUISANCES—*Lawful and Useful Business—Sic Utere Tuo Ut Alienum Non Laedas.*—The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over refined person. But, on the other hand, it does not allow any one, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity. The maxim, *sic utere tuo ut alienum non laedas,* expresses the well established doctrine of the law.

9. NUISANCES—*What are Nuisances.*—The term nuisance, in legal parlance, extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property.

10. NUISANCES—*Undertaking Establishment in Exclusively Residential Section—Sufficiency of Allegations in Bill for Injunction—Whether Bill Premature—Case at Bar.*—In the instant case, a suit to enjoin the erection and maintenance of an undertaking establishment and morgue in an exclusively residential section, the bill alleged that the establishment was to be placed in a strictly residential community in close proximity to the homes of complainants; that noxious odors and gases were to emanate therefrom, permeate their premises, and render their homes uncomfortable; that there was danger of contagion and disease from the establishment, and the possibility of flies passing from one place to the other.

*Held:* That if the allegations were true the establishment would be, in fact, a physical annoyance constituting a legal nuisance, and that the facts alleged were not such as to make it doubtful whether the proposed undertaking establishment might or might not be a nuisance, but affirmatively show that it would be a nuisance as a matter of law, and, therefore, the bill was not premature.

11. NUISANCES—*Undertaking Establishment—Proximity to Well of Complainant.*—In a bill seeking to enjoin the erection and maintenance of an undertaking establishment and morgue in a residential section,

it was alleged that the proposed morgue was being erected in eighteen feet of a well belonging to one of the complainants from which he obtained his drinking water.

*Held:* That this allegation entitled that complainant to an inquiry to ascertain if there was danger of his water supply being contaminated.

12. NUISANCES—*Injunction—Restraining Creation or Continuance of a Nuisance.*—Courts of equity have jurisdiction to restrain by injunction the creation as well as the continuance of a nuisance, which is likely to produce irreparable injury.

Appeal from a decree of the Circuit Court of Arlington county. Decree for defendant. Complainants appeal.

*Reversed and remanded.*

The opinion states the case.

*W. Thomas French* and *Crandal Mackey,* for the appellants.

*Ball & Douglas* and *William C. Gloth,* for the appellee.

CHINN, J., delivered the opinion of the court.

This suit was brought by the appellants, W. L. Bragg, L. C. Lloyd, George Robertson, Mrs. Lucy C. Harrington, and John G. Hanford, against the appellee, Claude J. Ives, to restrain said Ives from erecting and maintaining a proposed undertaking establishment and morgue on the ground that the same would constitute a private nuisance. A temporary injunction was awarded in accordance with the prayer of the bill, but the injunction was afterwards dissolved and the bill dismissed on demurrer, whereupon appellants secured this appeal.

[1, 2] The record consists solely of the bill, demurrer,

and orders of court referred to, and the only question presented is whether the allegations of the bill, which for the purposes of the demurrer must be taken as true, are sufficient in law to entitle appellants to the relief prayed for.

In substance the bill sets forth the following state of facts:

That appellants have all resided on Spruce street, in Clarendon, Virginia, for periods varying from one to eleven years, and own the properties whereon they respectively reside, their several families consisting of husband and wife, one or more young children, and the usual servants and help of the household; that Spruce street is intersected by Wilson boulevard, and about two months prior to the institution of this suit appellee purchased a certain lot located on a corner of said intersection, upon which he had begun to erect a building to be used as an undertaking establishment and morgue; that the said lot adjoins the property of appellant, W. L. Bragg, and is in the immediate neighborhood of the properties of the other appellants; and the morgue in course of erection thereon is in close, proximity to the dwellings of all the appellants and within approximately eighteen feet of the well owned by said Bragg, from which he obtains all his drinking water and water for other household use; that the community in which appellants live has always been strictly residential, and the lot purchased by appellee had previously been used exclusively for such purposes; that the proposed undertaking establishment is plainly visible from the respective windows and porticos of all the appellants, from which could plainly be seen the coming and going of the hearse, and the taking in and out of bodies; that if the appellee is allowed to erect and maintain the said morgue and undertaking estab-

lishment, on account of its proximity noxious odors and gases, especially those used as deodorants, would permeate the homes of appellants, making it inconsistent with health or pleasure to open their windows or occupy their porticos; there would be danger of infection and contagion, and the possibility of flies passing from one place to the other; that the conducting of said undertaking business in said community cannot help but have a depressing effect upon complainants and their families, weakening their physical condition, and rendering them more susceptible to disease; and that the erection and maintenance of said establishment will be greatly injurious to the value of appellants' property.

Finally the bill alleges that the said business will constitute a nuisance to appellants, and prays for an injunction and general relief.

The grounds of demurrer are:

"First: That the bill is not sufficient in law.

"Second: That the said bill of complaint and each paragraph thereof does not show that the establishment of said undertaking and embalming parlors is a nuisance *per se.*

"Third: That the said bill of complaint is premature in that the complainants attempt to enjoin a legitimate business and one that is not a nuisance *per se* prior to the actual establishment of said business."

[3] It is conceded by appellants that an undertaking establishment is not a nuisance *per se,* but it is contended that it may be such because of the circumstances under which it is conducted and the place at which it is maintained; that the intrusion of an undertaking establishment into an exclusively residential community, when accompanied by a depreciation of

property values is, of itself, sufficient to constitute it a nuisance; and that the bill in this case alleges facts sufficient to show that the business appellee proposes to establish would constitute a nuisance in fact, which appellants have a right to forestall by means of injunctive relief.

The question of when and under what circumstances the establishment of an undertaking business in an exclusively residential community will or will not constitute a nuisance, is one of first impression in this State, and the declarations of the courts of other jurisdictions on the subject are neither very numerous nor entirely harmonious.

In *Densmore* v. *Evergreen Camp*, 61 Wash. 230, 112 Pac. 255, 31 L. R. A. (N. S.) 608, Ann. Cas. 1912B, 1206, one of the earliest cases on the subject, where an injunction was granted to prohibit the location of an undertaking establishment in the residential part of the city of Everett under the Washington statute which somewhat enlarged the common law definition of a nuisance, the court said:

"That an undertaking establishment is not a nuisance *per se* may be assumed without citing authority. It is shown that it is the purpose of the appellant Maulsby to maintain every sanitary precaution known to the profession of morticians. The question before us is whether such an establishment, by reason of its location and being operated in a legitimate manner, may be or become a nuisance within the definition of the statutes of this State. In the case of *Everett* v. *Paschall*, 61 Wash. 47, 111 Pac. 879 [31 L. R. A. (N. S.) 827, Ann. Cas. 1912B, 1128], we called attention to the fact that the question of nuisance or no nuisance cannot be determined by reference to the rules of the common law, but that each case must be considered

upon its own facts. For in this age, when population is becoming more and more congested in the cities, it would be manifestly unfair to grant injunctive relief only in those cases where the object attacked was a nuisance *per se*, when other circumstances or conditions intervene which might tend to destroy the repose and comfort of a part of a city or town given over to homes. In this case, as in that, the element of comfort and repose in the enjoyment of the home becomes an essential element of our inquiry. For it is not only shown by the evidence, but it may be accepted as within the common knowledge of man, that the immediate presence of those mute reminders of mortality, the hearse, the chapel, the taking in and carrying out of bodies, the knowledge that within a few feet of the windows of one's dwelling house where the family sleep and eat and spend their leisure hours, autopsies are going on, that the dead are there, cannot help but have a depressing effect upon the mind of the average person, weakening, as the testimony shows, his physicial resistance and rendering him more susceptible to contagion and disease."

In this case the court also found that there was "evidence tending to show that noxious odors, gases, especially those arising from the deodorants used in cleansing the premises, would permeate the homes of respondents, and there was danger of infection and contagion from the proximity of the morgue, and the possibility of flies passing from one place to the other;" but the question of depreciation in property values was ignored.

This case was followed in *Goodrich* v. *Starrett*, 108 Wash. 437, 184 Pac. 220, where an injunction was held justified against the maintenance of an undertaking establishment and morgue in a building somewhat out

of repair, in a residential portion of a city, which had caused a substantial decrease in the value of the adjacent property of the plaintiffs.

In *Saier* v. *Joy*, 198 Mich. 295, 164 N. W. 507, L. R. A. 1918A, 825, it was held that the opening of a morgue and undertaking establishment in a residence district, to the depreciation of the value of the neighboring property, may be enjoined as a nuisance. The court did not find that there was danger of disease, but was not satisfied that noxious odors would not escape the defendants' premises in embalming, deodorizing and sanitation. The court quotes with approval the language used by the Washington court in *Densmore* v. *Evergreen Camp, supra,* as above quoted herein; and, after stating that the argument of the case revolved largely around the question of whether the maintenance of an undertaking establishment in close proximity to a home would so affect the normal mind as to render its maintenance in a strictly residential district a nuisance, said:

"We think it requires no deep research in psychology to reach the conclusion that a constant reminder of death has a depressing influence upon the normal person.   *   *   *   *   Mental depression, horror, and dread, lower the vitality, rendering one more susceptible to disease, and reduces the power of resistance. There is abundance of evidence in this record confirmatory of this, and it is a matter of common knowledge."

And again:

"We cannot overlook the right to engage in a lawful trade, nor the fact that the undertaking business is not only lawful, but highly necessary, nor that it is not a nuisance *per se.*   Nor can we overlook the right of the citizen to be protected in his home, and the right to the

enjoyment there of that repose and comfort that are inherently his. The question here is not the restraining of defendants' business, but the restraint of its intrusion into a long established and strictly residential district."

And in conclusion:

"We have here a case of the maintenance of a business which, while not a nuisance *per se*, is such as to these plaintiffs by reason of its location in a strictly residential district—a business which will cause depression to the normal person, lowering his vitality, rendering him more susceptible to disease, and depriving his home of the comfort, repose, and enjoyment to which he is entitled. Coupled with this is the substantial financial loss, due to the depreciation in the value of his property, and the strong probability that added to the other discomforts he will be called upon to suffer will be noxious odors during the summer months. Such a case appeals to the conscience and discretion of the court, and calls for injunctive relief."

In *Leland* v. *Turner*, 117 Kan. 294, 230 Pac. 1061, it was held that the maintenance of an undertaking establishment of the character proposed to be operated in that case, at the intersection of two principal residence streets in a residential district of a city, is a nuisance as to the owners of nearby property, whose property will be reduced in value, and whose comfort, repose and enjoyment of their homes will be materially diminished by the mental depression and distress caused by the operation of said establishment under the circumstances disclosed; the court saying:

"While equity does not concern itself with any and every petty annoyance incident to the congested life of a modern community (*Ross* v. *Butler*, 19 N. J. Eq. 294, 97 Am. Dec. 654), yet equitable relief will be

granted at the instigation of a private individual upon a. sufficient showing that the persistent misconduct of another or the use to which another has devoted his property is such as to cause the aggrieved party positive and serious annoyance, mental or physical;  *  *."

In *Tureman* v. *Ketterlin*, 304 Mo. 221, 263 S. W. 202, 43 A. L. R. 1155, the complainants sought to enjoin the maintenance of "an undertaking establishment, morgue and funeral home" in a section of Kansas City alleged to be residential. The building selected for the purpose had previously been used as a residence. It was held that notwithstanding the fact that the surrounding territory had fallen into decay as a residential district, and numerous business enterprises were appearing here and there, the district was still essentially residential in character and the injunction was sustained; apparently upon the sole theory that the maintenance of an undertaking establishment in a residential district tends to destroy the comfort, wellbeing and property rights of the owners of homes therein. The court saying:

"An undertaking establishment is not a nuisance *per se*. The business of preparing dead bodies for burial is not only lawful but indispensable. It may become a nuisance, however, from the manner in which it is conducted or because of the place at which it is maintained, and it is very generally held to be such when it introduces itself into a strictly residential district." (Citing the above and other cases.) "The essential ground of such holding is that the maintenance of an undertaking establishment in a residence district tends to destroy the comfort, well being, and the property rights of the owners of homes therein."

The cases of *Cunningham* v. *Miller*, 178 Wis. 22, 189 N. W. 531, 23 A. L. R. 739, and *Beisel* v. *Crosby*, 104

Neb. 643, 178 N. W. 272, both hold to the same effect
the court, in the latter case, saying:

"Where an undertaker purchases and uses for a
funeral home in a city a dwelling house situated within
a few feet of private dwellings in an exclusively residen-
tial district, in disregard of timely protest by residents
thereof, and thus encroaches on the repose, the com-
fort, and the freedom of their homes, depreciates the
value of their property, depresses their spirits, and
weakens their power to resist disease, injunction is
their proper remedy, but the allowance of the writ
depends upon the facts and circumstances of the
particular case."

The cases of *Meagher* v. *Kessler*, 147 Minn. 182, 179
N. W. 732; *St. Paul* v. *Kessler*, 146 Minn. 124, 178
N. W. 171; *Osborn* v. *Shreveport*, 143 La. 932, 79 So.
542, 3 A. L. R. 955; *Brown* v. *Los Angeles*, 183 Cal.
783, 192 Pac. 716; and *Higgins* v. *Bloch*, 213 Ala. 209,
104 So. 429, will be found to either support or tend to
support the views expressed in the foregoing decisions.

The cases in point and holding the contrary view are:
*Westcott* v. *Middleton*, 43 N. J. Eq. 478, 11 Atl. 490;
*Dean* v. *Powell Undertaking Co.*, 55 Cal. App. 545, 203
Pac. 1015; *Pearson* v. *Bonnie*, 209 Ky. 307, 272 S. W.
375, 43 A. L. R. 1166; and *Stoddard* v. *Snodgrass*, 117
Ore. 262, 241 Pac. 73, 43 A. L. R. 1160.

In *Westcott* v. *Middleton, supra*, which seems to be an
injunction against the maintenance of an undertaking
establishment on the lot adjoining the one on which
the plaintiff resided, it appeared that the defendant
had been conducting his business in its then present
location for eleven years, which is spoken of as a "pop-
ulous part" of the city; that no noxious vapors or germs
of disease were noticed as a result of the business and
that the main feature of offensiveness resulted from the

plaintiff's sensitive nature and repugnance to anything pertaining to death. The court quoted with approval an English judge as follows:

" 'In this case, then, we have the broad, yet perfectly perceptible or tangible, ground or principle announced, that the injury must be physical, as distinguished from one purely imaginative. It must be something that produces real discomfort or annoyance through the medium of the senses; not from delicacy of taste or refined fancy. This is very comprehensive; indeed I cannot conceive of a more liberal or broad statement of the law * * *. The results of my inquiries are that while the defendant has no right to conduct his business so as to endanger or threaten the health of the complainant, or to make his home uncomfortable, either by filling the air with noxious vapors, or the germs or seeds of disease, the evidence does not show that he has done either, and that the business of an undertaker is not a nuisance *per se.*' "

In commenting on the above decision, in the case of *Saier* v. *Joy, supra,* the Michigan court observes:

"The complainant in that case appeared to have been a supersensitive temperament, while the rights of the parties should be measured by that which affects the normal person—not the supersensitive on one hand, or the hardened, enured, on the other."

In the case of *Dean* v. *Powell Undertaking Co., supra,* the California court quotes with approval the passage above quoted from *Westcott* v. *Middleton,* and reversed a judgment enjoining the defendant from erecting in residential district of a city a proposed undertaking establishment on the ground that "the plaintiffs have not made any showing to the effect that defendant's building will be so constructed and operated that there will escape from the building any noxious

odors, or that any disease will be allowed to spread therefrom."

In *Pearson* v. *Bonnie, supra,* it was held by the Kentucky Court of Appeals that an injunction will not lie against the establishment of an undertaking business in the residential portion of a city, where the only injury is depreciation in the value of neighboring property and the injury to the feelings of its occupants because of sentimental repugnance to the business.

In *Stoddard* v. *Snodgrass, supra,* an injunction was refused where the defendants, under a permit from the authorities, moved an undertaking establishment, which they had been conducting for ten years, to the opposite side of the street and almost immediately opposite their old location; had expended a large sum of money in the construction of the building, and had been operating the business for two months before the injunction was applied for. The Oregon court also quoted with approval from the opinion in *Westcott* v. *Middleton, supra,* and said:

"The injury complained of was mental, rather than physical and was one which did not affect all persons alike, but only affected those who were over-nervous or supersensitive. This was not sufficient to entitle plaintiffs to the relief sought. Since the injury was mental, rather than physical, the effect complained of must be one which would be shared by normal persons, and not by those who are over-nervous or supersensitive. The law cannot take notice of things which are not offensive to normal persons."

We have reviewed the above cases at greater than necessary length perhaps, and at the risk of tediousness, because the immediate question here involved is of first impression in Virginia, and in order to justify, by what we consider the best reasoning and authority, the conclusions reached by this court.

[4–7] That an undertaking establishment located in a residential community which subjects the near-by residents to the annoyance of noxious odors, gases, and the like, to the extent of rendering their homes physically uncomfortable, or which exposes the occupants of such homes to danger of contagion and disease, is a nuisance which a court of equity will enjoin is beyond question. Upon this all the authorities dealing with the subject agree. But, while some cases apparently hold that the mere intrusion of an undertaking establishment and morgue into an exclusively residential community, when accompanied by a resulting material depreciation in the value of adjacent property, is sufficient to constitute a nuisance to the owners and occupants of said property, we think it clear, and the better opinion is, that the question of whether or not the intrusion of such an establishment constitutes a legal nuisance must depend upon the facts and circumstances of each particular case. We agree with those decisions, however, which hold that when an undertaking establishment invades a community which has previously been strictly residential, and the character of the business, or the manner in which it is conducted, is such as will naturally depress the spirits and sensibilities of those living in close proximity to it, to the extent of weakening their power to resist disease and destroying the comfort, repose and enjoyment of their homes, making them less desirable and thereby materially depreciating their value, then such business is a nuisance to those so affected by it. It is true that the objection to the business must be something more than imaginary, or an individual aversion to the proximity of the establishment and to the thought of death superinduced by its nearness and the activities carried on in connection with it. The annoyance complained

of must be something real, substantial and tangible—one that affects the normal person, not the over-nervous or supersensitive, nor yet the hardened and stoical, but the ordinary man, with ordinary sensibilities, tastes and feelings. The maintenance of an undertaking establishment under circumstances that produce such a result upon such a person goes beyond mere mental disturbance—it involves the physical enjoyment and comfort of the home, with which no business, however lawful and necessary, has the right to interfere.

In the case of *Ross* v. *Butler*, 19 N. J. Eq. 294, 97 Am. Dec. 654, the court said:

[8] " 'The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over refined person. But, on the other hand, it does not allow any one, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity. The maxim, *sic utere tuo ut alienum non laedas*, expresses the well established doctrine of the law.' "

In *Herring* v. *Wilton*, 106 Va. 171, 55 S. E. 546, 7 L. R. A. (N. S.) 349, 117 Am. St. Rep. 997, Judge Keith quotes with approval from the case of *Dittman & Berger* v. *Repp*, 50 Md. 516, 33 Am. Rep. 325, as follows:

"In all such cases the question is whether the nuisance complained of will or does produce such a condition of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibilities and of ordinary tastes and habits, and as, in view of the circumstances of the

case, is reasonable and in derogation of the rights of the complainant."

While another type of nuisance was there being considered, the same principle applies to any case in which the senses are involved.

[9] "The decisions establish that the term nuisance, in legal parlance, extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." 20 R. C. L. page 380.

[10, 11] In view of the above conclusions, we are of the opinion that the bill is sufficient in law, and is not premature. We are not unmindful of the rule as announced in *City of Lynchburg* v. *Peters*, 145 Va. 1, 133 S. E. 674, where Judge Chichester said:

"It is a well established principle of equity jurisprudence that where a proposed structure, or the use of it, is not a nuisance *per se*, a court of equity will not grant an injunction against the erection of a structure and the use, merely because it may become a nuisance. The alleged nuisance must be the necessary result or the court will await the actual results."

But we do not think the rule applies in this case. The facts alleged in the bill are not such as make it doubtful whether the proposed undertaking establishment might or might not be a nuisance, but there are facts stated which affirmatively show that it would be a nuisance as a matter of law. Briefly, those facts are: That said establishment and business was to be placed in a strictly residential community in close proximity to the property and homes of appellants; that noxious odors and gases would emanate therefrom, permeate their premises, and render their homes uncomfortable; that there would be danger of contagion and disease

resulting from the establishment of the morgue, and the possibility of flies passing from one place to the other. These allegations might not be sustained by the proofs, but if true the establishment would be, in fact, a physical annoyance constituting a legal nuisance. Moreover, it is alleged that the proposed morgue was being erected in eighteen feet of the well belonging to one of the appellants from which he obtained all his drinking water. From this we infer the fact that Clarendon is a semi-rural community, without a water supply or sewerage system. But whether this deduction is justified or not, that allegation alone, we think, entitled this appellant to an inquiry to ascertain if there was danger of his water supply becoming contaminated from the morgue.

[12] "The jurisdiction of a court of equity to restrain by injunction the *creation* or continuance of a nuisance, which is likely to produce irreparable injury is well established and constantly exercised." *Masonic Temple Ass'n* v. *Banks*, 94 Va. 695, 27 S. E. 490. (Italics supplied.)

We are, therefore, of the opinion that, if asked for, the temporary injunction should have been extended until the case could be heard on the merits and all the facts ascertained; or, at least, the bill should have been retained for that purpose.

We wish it to be understood that we do not intend to express any opinion as to the merits of this case. We are only dealing with the legal questions presented by the pleadings and the contentions of the parties. If an answer is filed, the question of whether the undertaking establishment in question is or is not a nuisance in fact must be determined by the chancellor according to the facts before him. *Lynch* v. *Clinch Motor Co.*, 131 Va. 202, 108 S. E. 641.

The decree of the lower court sustaining the demurrer and dismissing the bill is reversed, and the cause remanded to be proceeded with in accordance with the views expressed in this opinion, if appellants are advised to prosecute it further.

*Reversed and remanded.*