**Leonard P. GOLLOBIN and Charlotte Gollobin, Plaintiffs,**

v.

**AIR DISTRIBUTING CO., INC., Defendant.**

Civ. A. No. 93–1188.

United States District Court, E.D. Virginia, Alexandria Division.

Dec. 8, 1993.

Robert Tayloe Ross, James A. Kline, IV, Cherry, Abady, Seymour & Ross, Richmond, VA, for plaintiffs.

William J. Virgulak, Jr., Doherty, Sheridan & Grimaldi, Fairfax, VA, for defendant.

## *MEMORANDUM OPINION*

ELLIS, District Judge.

### I.

This diversity suit alleges breach of contract, negligence, strict liability, and statutory causes of action growing out of the accidental spillage of heating oil into the basement of plaintiffs' farm home. The novel question presented by defendant's dismissal motion is whether Virginia Code § 62.1–44.-34:14, *et seq.*, as amended in 1990, extends strict liability to the discharge of oil onto private lands.[1] An examination of the statute reveals that this broad interpretation is warranted and that the liability imposed by Virginia Code § 62.1–44.34:14 *et seq.* extends to oil discharges occurring on all lands located within the Commonwealth of Virginia.

### II.

In the spring of 1991, the Gollobins, owners of a farm located in Loudoun County, Virginia, contracted with defendant Air Distributing Co., Inc. ("ADCO") for the performance of mechanical work at the farm's residence. One aspect of this agreement required ADCO to install, and ensure the proper operation of, a new oil burning furnace for the residence. In the course of installing the furnace, ADCO disconnected the old furnace from the oil supply lines that delivered oil to the furnace from the oil tank. These lines were neither sealed off nor reconnected to the new furnace.

In late summer 1991, a heating oil supplier, unbeknownst to ADCO, delivered a substantial quantity of fuel oil to the external oil tank located at the farm. Because the oil supply lines from the tank had not been connected to the new furnace or sealed off, approximately 450–600 gallons of this oil spilled directly onto the floor of the basement of the residence. The Gollobins contend that the spill occurred because ADCO had negligently failed to cap, seal, or otherwise close the oil supply lines which had been disconnected or severed in the course of installing the new furnace. Among the several claims brought by the Gollobins against ADCO is a claim that ADCO discharged or caused or permitted a discharge of oil upon the Gollobins' land, in violation of Virginia Code § 62.1–44.34:14, *et seq.*

### III.

Until 1990, liability for the discharge of oil was found in Virginia Code §§ 62.1–44.34:2 & :3, which only prohibited "a discharge of oil into state waters ..." and "[t]he discharge of oil into or upon the waters of the Commonwealth." Then, in 1990, the General Assembly enacted § 62.1–44.34:14, *et seq.*, to amend and replace §§ 62.1–44.34:2 & :3, which were repealed. The amended version of the statute expands the reach of the existing legislation beyond state waters to include lands and storm drain systems. Specifically, the amended statute declares that "[t]he dis-

---

1. Additional, more routine issues raised by the motion to dismiss were ruled on from the bench, but are not treated in this memorandum opinion.

charge of oil into or upon state waters, lands, or storm drain systems within the Commonwealth is prohibited." Virginia Code § 62.1–44.34:18.[2] This new language is the focus of the issue at bar. Specifically, the question presented is whether the expansion of the statute to cover "lands" was intended by Virginia's General Assembly to include the discharge of oil upon *private,* as well as *public* or *state,* lands.[3]

■ Because this is a question of statutory interpretation, analysis properly begins with an examination of the statute's plain language. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Where a statute's plain language is unambiguous, judicial efforts to construe or interpret the statute are unnecessary and inappropriate. In that event, the statute must be applied in accordance with its plain meaning. *See Rubin v. United States,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *Helvering v. New York Trust Co.,* 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361 (1934); *In re Forfeiture Hearing as to Caplin & Drysdale, Chartered,*

837 F.2d 637, 641 (4th Cir.1988); *Salomon Forex, Inc. v. Tauber,* 795 F.Supp. 768, 773 (E.D.Va.1992). But where the statute may reasonably be said to be infected with an ambiguity,[4] it is appropriate for courts to resolve the ambiguity through the application of settled rules of statutory construction and interpretation. *See United States v. Jackson,* 759 F.2d 342, 344 (4th Cir.1985), *cert. denied,* 474 U.S. 924, 106 S.Ct. 259, 88 L.Ed.2d 265 (1985). Whether a statute is ambiguous is a question of law to be determined by the court. *See Wilson v. Holyfield,* 227 Va. 184, 313 S.E.2d 396, 398 (1984).

■ It is fair to say that ambiguity does infect the statute here in issue; the parties' arguments for conflicting interpretations of the statute are strong evidence for this. But close scrutiny of the statute's plain language and structure point convincingly in only one direction, namely toward the conclusion that the statute applies to oil discharges on "state" lands, which category of lands includes privately as well as publicly owned land. To begin with, there can be no reasonable doubt that in the phrase "discharge of oil into or upon state waters, lands, or storm drain systems within the Commonwealth,"

2. Other pertinent provisions of the statute are as follows:

   C. Any person discharging or causing or permitting a discharge of oil into or upon state waters, lands, or storm drain systems, discharging or causing or permitting a discharge of oil which may reasonably be expected to enter state waters, lands, or storm drain systems, or causing or permitting a substantial threat of such discharge and any operator of any facility, vehicle or vessel from which there is a discharge of oil into or upon state waters, lands, or storm drain systems, or from which there is discharge of oil which may reasonably be expected to enter state waters, lands, or storm drain systems, or from which there is a substantial threat of such discharge, shall be liable to:

   1. The Commonwealth of Virginia or any political subdivision thereof for all costs and expenses of investigation, containment and cleanup incurred as a result of such discharge or threat of discharge …;

   2. The Commonwealth of Virginia or any political subdivision thereof for all damages to property of the Commonwealth of Virginia or the political subdivision caused by such discharge;

   3. The Commonwealth of Virginia or any political subdivision thereof for loss of tax or other revenues caused by such discharge, and compensation for the loss of any natural resources that cannot be restocked, replenished or restored; and

   4. Any person for injury or damage to person or property, real or personal, loss of income, loss of the means of producing income, or loss of the use of the damaged property for recreational, commercial industrial, agricultural or other reasonable uses, caused by such discharge.

Va.Code § 62.1–44.34:18(C).

3. The statute plainly applies to an oil discharge on private, as well as public lands when there is a reasonable expectation that the discharge will reach state waters, including an underground aquifer. *See* Va.Code § 62.1–44.34:18(C). No allegation of this sort appears in the complaint.

4. The Supreme Court of Virginia defines "ambiguity" as "the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time." *Management Enters., Inc. v. Thorncroft Co.,* 243 Va. 469, 416 S.E.2d 229, 231 (1992) (quoting *Berry v. Klinger,* 225 Va. 201, 300 S.E.2d 792, 796 (1983)).

the qualifier "state," placed before "waters," is applicable to "lands" as well. This follows from the statute's structure, which groups "lands" with "waters" and separates both of these terms from "storm drain systems" by the use of the disjunctive "or." Given this grouping, the qualifying term "state" modifies "lands" as well as "waters," whereas the qualifying phrase "in the Commonwealth" applies only to "storm drains." Had Virginia's General Assembly intended otherwise, that intention could easily have been expressed.

The next question to be answered, then, is what lands fall within the statutory category of "state lands." Although the statute does not include a definition of "state lands," it does define "state waters" as "all water, on the surface and under the ground, wholly or partially within or bordering the Commonwealth or within its jurisdiction." Va.Code § 62.1–44.3. This definition does not distinguish between public and private waters; rather it extends to all waters physically found within, or bordering, the state. Consequently, the qualifier "state," when applied to "lands," must have this same geographical connotation and therefore would apply to public and private lands found within the state.[5] Again, had Virginia's General Assembly intended to limit the statute's application to state-owned lands, it could easily have chosen appropriate language to express this intent. Instead, the General Assembly chose to make the statute applicable to "state lands," which, by reference to the statutory definition of "state waters," means all lands within the state.

This conclusion finds support elsewhere in the statute. For example, § 62.1–44.34:23 lists one of the exceptions to the statute as "accidental discharges from farm vehicles or noncommercial vehicles." It is reasonable to expect that the General Assembly would not have included this exception, which clearly involves privately owned farm land, if "state

lands" extended only to publicly owned lands. Instead, the General Assembly surely included this exception because the statute applies to privately held lands, such as farm land.

Further support for a broad reading of "state lands" is found in the scope of liability created by the statute. The statute holds offenders liable to

[a]ny person for injury or damage to person or property, real or personal, loss of income, loss of the means of producing income, or loss of the use of the damaged property for recreational, commercial, industrial, agricultural or other reasonable uses, caused by such discharge. Va.Code § 62.1–44.34:18(C)(4).

This passage clearly contemplates damage to private property. A reading of "lands" as including only publicly owned lands would therefore be inconsistent with the scope of liability created by the statute.

■ Further support for a reading of "state lands" which includes private lands is found in the purpose of the statute. A statute's underlying purpose is an important interpretive guide in statutory construction. *See United States v. Morton,* 467 U.S. 822, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984); *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *United Hospital Center, Inc. v. Richardson,* 757 F.2d 1445, 1451 (4th Cir.1985). Here, the statute's purpose is to provide the Commonwealth of Virginia or any political subdivision thereof or any person[6] with a remedy when a discharge of oil causes harm to human health or welfare, harm to the environment, or damage to personal or real property. This statutory purpose, which includes providing private individuals with a cause of action for damage to their real or personal property, supports, indeed compels, the result reached here.

[6] Even though § 62.1–44.34:18 applies to all lands within the Commonwealth, the

---

**5.** In *In re Virginia Builders, Inc.,* 153 B.R. 729 (Bkrtcy.E.D.Va.1993), a bankruptcy court construing the statute reached the same result. There, the court examined whether a debtor had an obligation to pay environmental remediation costs to a creditor bank. In finding that the debtor had such an obligation, the court concluded without discussion that § 62.1–44.34:18 applied to oil contamination of private land.

**6.** "Person" is defined as "any firm, corporation, association or partnership, one or more individuals, or any governmental unit or agency thereof." Va.Code § 62.1–44.34:14.

question remains whether, as a matter of law, defendant "caused" the oil discharge at the Gollobins' farm residence.[7] ADCO claims that the Gollobins' complaint fails to allege that ADCO either ordered the delivery of heating fuel oil or was aware that the delivery of fuel oil would be made during the progress of its work, and that, without further allegations of causation, the Gollobins' claim under § 62.1–44.34:18 must fail. This argument is not persuasive. The complaint's allegations are sufficient to raise the statutory causation issue. For example, the current allegations adequately raise the issue whether ADCO had a duty to cap, seal or otherwise close the Gollobins' oil feed lines and that ADCO's failure to perform this duty caused the oil discharge at issue. Thus, the Gollobins' § 62.1–44.34:18 cause of action survives this threshold attack on the sufficiency of the causation allegations. But, of course, ADCO is free to pursue this issue in discovery and to renew the causation attack at the summary judgment stage should the record warrant doing so.[8]

Because Virginia Code § 62.1–44.34:18 applies to oil discharges on private lands in Virginia, and because the Gollobins have made allegations sufficient to support a finding that ADCO "caused" the oil discharge, ADCO's motion to dismiss the Gollobins' claim under § 62.1–44.34:18 must be denied.

An appropriate order will issue.

---

7. It should be noted that § 62.1–44.34:18 bases liability upon strict liability and the statute specifically provides that neither pleading nor proof of negligence in any manner or form is required.

8. Another issue that may arise on summary judgment concerns whether the spill on the Gollobins' property occurred on state lands or rather in a sealed enclosure, such as a concrete basement, from which there was no threat of release to state lands or waters.