851 F.Supp. 770 (1994)
Nolan J. ADAMS, et al., Plaintiffs,
v.
STAR ENTERPRISE, et al., Defendants.
Civ. A. No. 94-221-A.
United States District Court, E.D. Virginia, Alexandria Division.
May 5, 1994.
David Machanic, Reed, Smith, Shaw & McClay, McLean, VA, for plaintiffs.
*771 John A.C. Keith, Blankingship & Keith, Fairfax, VA, for defendants.

MEMORANDUM OPINION
BRINKEMA, District Judge.
In its present posture, this action by a group of homeowners for monetary damages against a polluter presents issues that have not been directly addressed in this Circuit. The three-count complaint seeks relief based on private nuisance (Count I), negligence (Count II), and strict liability pursuant to the Virginia Water Control Act, Va.Code Ann. § 62.1-44.34:18, (Count III). The primary issue is whether the homeowners' mere fear of future contamination and the allegedly related diminution in property values as a result of such fear in the buying public's collective mind are actionable. More succinctly, can owners of uncontaminated property be compensated for "stigma" damages? Plaintiffs' theory of recovery rests solely on alleged interference with their use and enjoyment of their property, measured by the diminution of property value resulting from their location near a notoriously polluted area.
Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), claiming that, because plaintiffs have not alleged any actual or imminent physical impact on themselves or their properties from the pollutants, they have failed to state a valid claim on which relief may be granted. Defendants further argue that even if plaintiffs' claims were valid, they would be barred by Virginia's one year statute of limitations, Va.Code Ann. § 8.01-243[1], and that under Virginia law, plaintiffs cannot allege both nuisance and negligence arising from the same events.
The questions have been briefed and argued and are ripe for disposition. For the reasons stated herein, the Court concludes that plaintiffs' allegations fail to state a claim for which relief can be granted. Accordingly, defendants' motion to dismiss is GRANTED as to all three counts.

I
This action arises from an oil spill at defendants' distribution facility in Fairfax, Virginia.[2] Defendants' facility, often referred to as the "tank farm," is located near a residential subdivision known as Mantua.
In September 1990, a Mantua resident informed the Virginia State Water Control Board that there was a sheen of gasoline on the surface of Crook Branch Creek, which runs through Mantua. (Complaint, ¶ 6). On October 26, 1990, defendants reported that an oil spill had occurred at their terminal. (Id.).
In April, 1992, the Environmental Protection Agency ("EPA") determined that a "major discharge" of oil in excess of 100,000 gallons had occurred at the terminal. See 40 C.F.R. 300.5. The EPA also indicated that the discharge posed a substantial threat to public health, welfare, or the environment. The spill consists of diesel fuel, jet fuel or kerosene, and gasoline. These petroleum products have leeched into the groundwater and surface waters and now form an underground plume which extends in an approximate northeastern direction from under the defendants' terminal. The plume has also infiltrated the existing storm water sewer system that empties into Crook Branch. As of April 23, 1992, the EPA knew the plume to be under the Stockbridge residential community, a subdivision of the Mantua community. It was recognized at that time that a serious *772 potential existed for the plume to continue moving along foliation planes and quartz fractures in a northeasterly direction. The oil in the plume is present in petroleum phases which contain benzine, toluene, ethyl-benzine and xylene (BTEX). Exposure to BTEX compounds is associated with various health risks including cancer, dermatitis, impaired reproduction, and nervous system depression. (Id.).
In accordance with state and federal government directives, defendants are making remediation efforts. Such efforts include drilling and monitoring numerous wells in the Mantua neighborhood, installation of a segmented trench recovery system and containment trenches, and repairs to storm sewers. (¶ 12). These remediation efforts necessitated temporary inconvenience to local residents. (¶ 11). Torn-up streets and rumbling construction equipment disrupted and even precluded normal community activities. (Id.).
Plaintiffs seek compensation for interference with their use and enjoyment of their properties (1) during the period immediately after the spill when they were exposed to significant health risks and (2) flowing from the stigma that has attached to their properties in the minds of the buying public, as represented by the diminution of their properties' market value. Plaintiffs allege that health risks were present from the toxic fumes and vapors coming from the sanitary sewer pipes, drinking wells, and the remediation activities. (¶ 13). Plaintiffs admit that such health risks may have been substantially curtailed as a result of remediation to date, but still assert that for a considerable period of time they suffered from a reasonable fear of being exposed to toxic materials. (¶ 16). Plaintiffs also allege that despite defendants' remediation efforts, the buying public persists in its fears of negative health effects from the contamination and the possibility that the contamination may travel to nearby properties and cause property damage. (¶¶ 17, 18). Plaintiffs claim that these are justifiable and reasonable fears. (¶ 18 et seq.).

II
In evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court should review the adequacy of the complaint liberally. Coakley & Williams, Inc. v. Shatterproof Glass Corp., 706 F.2d 456, 457 (4th Cir.1983). The motion should be denied "`unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" De Sole v. United States, 947 F.2d 1169, 1177 (4th Cir.1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-2, 2 L.Ed.2d 80 (1957)).

A. A nuisance claim without an allegation of actual intrusion into an owner's use and enjoyment of property is insufficient.
In Count I of the complaint, plaintiffs allege as discussed above that defendants are liable for damages associated with the continuing presence of the oil plume in the Mantua neighborhood. Defendants argue that because the plume has not actually contaminated plaintiffs' properties, plaintiffs have failed to state a claim upon which relief may be granted.
Nuisance is the descriptive term for interference with rights to the free use of land. First recognized in the Thirteenth Century as a criminal writ to remedy invasions of the plaintiff's land resulting from conduct on the defendant's land, nuisance law developed into a civil remedy providing a right to abate the nuisance.[3] The action evolved in the United States from a property law concept to one rooted in tort law, and enabled courts to weigh the extent of the interference with use and enjoyment of a plaintiff's property against the reasonableness of a defendant's activity. Carpenter v. Double R Cattle Co., 105 Idaho 320, 324, 669 P.2d 643, 647 (Ct. App.1983), vacated, 108 Idaho 602, 701 P.2d 222 (1985). A private nuisance action purports to remedy a civil wrong and may be *773 brought by the individual whose property interests have been invaded.
Virginia courts define private nuisance as follows:
"the using, or authorizing the use of, one's property, or of anything under one's control, so as to injuriously affect an owner or occupier of property (1) by diminishing the value of that property; (2) by continuously interfering with his power of control or enjoyment of that property; (3) by causing material disturbance or annoyance to him in his use or occupation of that property."
Virginian Railway Co. v. London, 114 Va. 334, 344-5, 76 S.E. 306 (1912). In Virginian, the court distinguished "nuisances in which the harm attributed consists of damage to realty itself" from nuisances "in which the damage consists of an interference with some right incident to the ownership or possession of realty." Id., at 344, 76 S.E. 306. In the second kind of nuisance action, the measure of damages is not based on physical damage to property, but rather on the extent of the actual or potential interference with the complaining property owner's use and enjoyment of his property.[4]
"[W]hether an intrusion of an owner's use and enjoyment of his property constitutes a legal nuisance must depend upon the facts and circumstances of each particular case." Bragg v. Ives, 149 Va. 482, 140 S.E. 656 (1927). Here a residential community has coexisted with the tank farm for a number of years. What has changed is the character of the operation tank farm. Plaintiffs allege that the tank farm was operated negligently, resulting in the oil spill. The spill is clearly not a reasonable use of defendants' property. To this extent, if proved, defendants have ceased to use their property in a reasonable manner.
In the complaint, plaintiffs allege that the existence of the plume produces some risk to health and property. However, at this point that risk is no more than mere mental distress. Plaintiffs do not complain of actual oil odors, ground water contamination, or other material interference with their properties. This action, therefore, is distinguishable from Bragg, which held that for nuisance to be properly pled, "the nuisance complained of will or does produce such a condition of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibilities ...", Bragg v. Ives, 149 Va. 482, 140 S.E. 656 (1927) (quoting Herring v. Wilton, 106 Va. 171, 55 S.E. 546 (1906)). In Bragg, plaintiff sought to enjoin the construction and operation of a funeral parlor. Defendant demurred to the bill of complaint as premature. The Bragg court overruled the demurrer permitting the plaintiff to present evidence on whether the proposed morgue would emit noxious odors that would render homes uncomfortable and possibly contaminate water supplies. Plaintiffs would have this court grant them the same opportunity. This the court cannot do. The plume, unlike the morgue, already exists. The actual extent of contamination is known; as to plaintiffs' properties at this time there is no contamination.
Defendants have directed this court to extensive authority for the proposition that negative publicity or stigma resulting from unfounded fear about dangers in the vicinity to property "does not constitute a significant interference with the use and enjoyment of land." Adkins v. Thomas Solvent Co., 440 Mich. 293, 487 N.W.2d 715 at 721 (1992); see also Berry v. Armstrong Rubber Co., 989 F.2d 822 (5th Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994); In re Paoli R.R. Yard PCB Litigation, 811 F.Supp. 1071 (E.D.Pa.1992); Miller v. Cudahy Co., 567 F.Supp. 892 (D.Kan.1983), aff'd in part and rev'd in part on other grounds, 858 F.2d 1449 (10th Cir.1988), cert. denied, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 *774 (1989). Plaintiffs have no such authority to support their expanded view of the reach of nuisance law.
Apart from stigma damage, plaintiffs have alleged that the remediation efforts have interfered with community functions and created other disturbances. The court finds that although these allegations are properly pled, they allege only temporary disturbances, while the damages sought reflect permanent injuries.[5] The general rule in such circumstances is plaintiff may bring repeated actions to recover for nuisance so long as the nuisance continues. However, a defendant will not be made to pay for a continuous nuisance that will at some time abate. Norfolk & W. Ry. Co. v. Allen, 118 Va. 428, 87 S.E. 558 (1915); Portsmouth Cotton Oil Refining Corp. v. Richardson, 118 Va. 667, 88 S.E. 317 (1916).

B. Plaintiffs fail to allege that defendant's negligence proximately caused their damages.
Assuming that defendants were negligent in their operation of the tank farm and that the contaminants, including the ever-encroaching plume, were released into the Mantua community as a result of that negligence, plaintiffs nevertheless fail to state a cause of action in negligence because they do not, and cannot, allege any direct harm from that negligence. The harm complained of, that is the diminution in property values, is a result of third-party fears about the contamination, not the contamination itself. Thus, plaintiffs have not properly pled that defendants' acts were the proximate cause of their injury and this count must be dismissed. Spence v. American Oil Company, Inc., 171 Va. 62, 197 S.E. 468 (1938).

C. Under the Virginia State Water Control Act, plaintiffs must allege more than mere stigma damages.
In the final count of their complaint, plaintiffs allege that defendants are strictly liable for damages under the Virginia State Water Control Act, Va.Code Ann. § 62.1-44.34:18 et seq., as amended in 1990. It has already been determined that § 62.1-44.34:18 et seq., as amended in 1990, extends strict liability to discharges of oil onto private lands. Gollobin v. Air Distrib. Co., Inc., 838 F.Supp. 255 (E.D.Va.1993). The issue presented in this action is whether under this strict liability statute, plaintiffs must allege actual physical damage to property before any liability for damages will attach.[6] We conclude, as did the state court in Greene, that an allegation of damage to a property interest must fit into one of the enumerated categories in the statute. Greene v. Star Enter., At Law No. 118167 (Va.Cir.Ct. Jan. 7, 1993), appeal dismissed, Record No. 930553 (Va.S.Ct. March 11, 1994). The diminution of property values attributable solely to public fears about future contamination is not an injury subject to remedy under this statute. As Judge Ellis has noted:
"the statute's purpose is to provide the Commonwealth of Virginia or any political subdivision thereof or any person with a remedy when a discharge of oil causes *775 harm to human health or welfare, harm to the environment, or damage to personal or real property."
[footnote omitted], Gollobin, 838 F.Supp. 255, 258. Accordingly, this count must also be dismissed.
NOTES
[1] Virginia's five-year statute of limitations covers "every action for injury to property." Va.Code Ann. § 8.01-243(B). The essence of plaintiffs' action is that the potential spread of the oil plume to their property has depressed market values. Were plaintiffs able to seek injunctive relief, their remedy would be to have defendants remove all the spilled oil from the neighboring soil. However, such relief is not available. Feikema v. Texaco, Inc., 16 F.3d 1408 (4th Cir., 1994). It remains clear that the action has "as its focus not relief from injury to the plaintiffs' persons, but to their property, and thus is subject to a five-year limitation under Virginia law." Chesapeake Bay Found., Inc. v. Virginia State Water Control Bd., 501 F.Supp. 821, 825 (E.D.Va. 1980).
[2] Plaintiffs' well-pleaded facts are accepted as true for purposes of this motion. Revene v. Charles County Commrs., 882 F.2d 870, 873 (4th Cir.1989); Maldonado v. Nutri/System, Inc., 776 F.Supp. 278, 281 (E.D.Va.1991).
[3] See Lewin, "Compensated Injunctions and the Evolution of Nuisance Law," 71 Iowa L.Rev. 775, 779 [n. 21].
[4] Defendants, in arguing that physical impact on the property itself is a necessary element for recovering damages on a tort claim, miss the distinction between trespass and trespass on the case. While trespass and nuisance often occur concurrently, the two torts are distinct. Trespass necessarily interferes with a property right, specifically, exclusive possession. Nuisance covers a much broader range of property rights, including the penumbral "use and enjoyment" right, buy does not extend to diminution of property values due to the buying public's attitude towards that property as a result of the nuisance.
[5] This court is mindful of the interplay between plaintiffs' damages and defendants' remediation efforts. Packett v. Herbert II, 237 Va. 422, 377 S.E.2d 438 (1989) (If the nuisance can be abated, plaintiff is only entitled to such damages as may have been sustained up to the time of the abatement of the nuisance, not including damages for the permanent diminution in the value of the property). However, consideration of the effects of remediation on plaintiffs' claims is not appropriate at this time.
[6] The relevant portion of the statute reads:

C. Any person discharging or causing or permitting a discharge of oil into or upon state waters, lands, or storm drain systems within the Commonwealth, discharging of causing or permitting a discharge of oil which may reasonably be expected to enter state waters, lands, or storm drain systems, or of any facility, vehicle or vessel from which there is a discharge of oil into or upon state waters, lands, or storm drain systems within the Commonwealth, or from which there is a discharge or oil which may reasonably be expected to enter state waters, lands, or storm drain systems, or from which there is a substantial threat of such discharge, shall be liable to: [...]
(4) Any person for injury or damage to person or property, real or personal, loss of income, loss of the means of producing income, or loss of the use of the damaged property for recreational, commercial, industrial, agricultural or other reasonable uses, caused by such discharge.