## A. P. TUREMAN et al. v. ALBERT KETTERLIN et al., Appellants.

### Division One, June 10, 1924.

1. **NUISANCE. Undertaking Establishment: Residential District.** An undertaking establishment is not a nuisance *per se*, but may become a nuisance because of the manner in which it is conducted or the place at which ,it is maintained, ,and is generally held to be such when it intrudes itself into a strictly residential district, and that is true because its maintenance there tends to destroy the comfort, the well being and the property rights of the owners of homes therein.

2. ———: ———: **Decaying Residential District.** Notwithstanding the once fine residences in the district in which it is proposed to set up and maintain an undertaking establishment are gradually being transformed into buildings for commercial uses, and no new residences are being built, yet if it is still essentially a residential district, its inhabitants are entitled to the same protection in the enjoyment of their homes as are those of an exclusive residential district.

3. ———: ———: **Stores: Oil Stations.** An undertaking establishment stands on a different footing from that of the occasionaᴵ corner grocery and oil-filling station which have made their appearance in a residential district. The corner grocery and the oil station offend the aesthetic sense; the undertaking establishment destroys in an essential respect the comfort and repose of the neighboring homes.

4. ———: **Appellate Jurisdiction.** Where the evidence for plaintiffs tends to show that if the relief they seek in their injunction suit

to enjoin as a nuisance the establishment of undertaking parlors and a morgue in the residential district is denied, their loss individually of some of them will exceed $7,500, the appeal from a judgment in their favor is to the Supreme Court.

Headnotes 1 to 3: **Nuisances:** 1, 29 Cyc. 1183, 2, 29 Cyc. 1158; 3, 29 Cyc. 1191. Headnote 4: **Courts,** 15 C. J. sec. 514.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern,* Judge.

Affirmed.

*Spencer F. Harris* for appellants.

(1) The judgment of the court that the proposed establishment would be a nuisance is contrary to the law and the evidence. Wiscott v. Middleton, 11 Atl. (N. J.) 490; Rea v. Tacoma Assn., 174 Pac. (Wash.) 961; Ellison v. Commissioners, 58 N. C. 57; Monk v. Packard, 71 Me. 309; Dean v. Powell, 203 Pac. (Cal.) 115. (2) The ordinance introduced in evidence is void. Tugman v. Chicago, 78 Ill. 405; Los Angeles v. Hollywood, 124 Cal. 344; Weadock v. Judge, 156 Mich. 376; Salt Lake City v. Western, 187 Pac. (Utah) 829; St. Louis v. Const. Co., 244 Mo. 479; State v. Sheriff, 48 Minn. 236; Ex parte Bohen, 115 Cal. 372; Ex parte Adolf, 215 S. W. (Tex.) 222; Yick Wo v. Hopkins, 118 U. S. 356.

*Wm. Paul Pinkerton* and *Sebree, Jost & Sebree* for respondents.

(1) The court properly held that the proposed undertaking establishment would be a private nuisance under the law and under the evidence, and its judgment rendered in accordance with such holdings is valid and should be affirmed by this court regardless of whether the ordinance in question in this case is valid or void. Beisel v. Crosby, 178 N. W. (Neb.) 272; Densmore v. Evergreen Camp, 112 Pac. Wash.) 255; Osborn v. City of Shreveport, 143 La. 932; Saier v. Joy, 198 Mich. 295; Goodrich v. Starett, 184 Pac. (Wash.) 220; Meagher v.

Kessler, 179 N. W. (Minn.) 732; Cunningham v. Miller, 189 N. W. (Wis.) 531. (2) The ordinance introduced in evidence is valid. St. Louis v. Fischer, 167 Mo. 657; St. Louis v. Howard, 119 Mo. 47; St. Louis Gunning Co. v. East St. Louis, 259 Mo. 99; Kansas City v. Libe, 252 S. W. 404; City of Chicago v. Repley, 94 N. E. 932; Article 1, sec. 1, K. C. Charter; Article 3, sec. 1, par. 4, K. C. Charter. The ordinance is not unreasonable on its face. St. Louis Gunning Co. v. East St. Louis, 235 Mo. 99. Plaintiff failing to plead facts showing it unreasonable or to prove any such facts cannot raise the point of its unreasonableness. St. Louis v. United Railways, 263 Mo. 454.

RAGLAND, J.—This is a suit to enjoin the location and operation of an undertaking establishment in Kansas City at a place which it is alleged would constitute it a nuisance at common law, and be in violation of an ordinance of the city as well.

The petition alleges that plaintiffs severally reside, or own residence property, in the immediate vicinity of No. 2657 Independence Boulevard; that defendants propose to locate and maintain at the latter place "an undertaking establishment, morgue and funeral home;" that the proposed location is in a residential district; that the dead bodies brought to such undertaking establishment would emit noxious effluvia, carrying germs of disease; that said bodies and the chemicals used in embalming them would give off noxious and offensive odors; that funerals would be continuously held there, and vehicles for that purpose would be always moving to and from, carrying the dead, the mourners and the bereaved; and that these conditions would injuriously affect the mental and bodily health of plaintiffs, or their tenants, destroy the comfort and repose of their homes and greatly depreciate the values of plaintiffs' several properties—all to their irreparable injury, etc. The petition further pleads an ordinance which provides that "it shall be unlawful for any person, firm or corpora-

tion to construct, locate, operate or maintain an undertaking establishment or morgue within one hundred feet of any building used exclusively for residential purposes in Kansas City, Missouri,'' and alleges that the location and maintenance of an undertaking establishment at No. 2657 Independence Boulevard would be in violation of such ordinance.

The joint answer of defendants, in addition to a general denial, alleges ''that the ordinance referred to and set out in plaintiffs' petition is void for the reason that the same is unreasonable and oppressive and for the further reason that the same is in violation of the Fourteenth Amendment of the Constitution of the United States, in that the same is class legislation and denies to defendant and all persons equal privileges and protection of the law and is confiscatory and deprives defendants of their property without due process of law and without just compensation.'' The answer admits that defendants intend to conduct an undertaking business at the place described in the petition unless restrained by the court.

A considerable portion of the evidence offered at the trial below was with respect to whether the place at which defendants purpose to set up their undertaking establishment is within a strictly residential district. The building they have selected for that purpose, itself a large stone structure heretofore used as a residence, is located on the south side of Independence Boulevard between Prospect and Chestnut avenues. The territory immediately surrounding it was at one time, perhaps twenty or twenty-five years ago, one of the most beautiful residence sections of Kansas City. But as a residential district it has now fallen into decay; no new homes are being constructed, while numerous business enterprises are appearing here and there. The occupation for residential purposes still greatly predominates over any other, however. While some of the fine old homes there are now occupied by tenants and show evidences of neglect, many others are occupied by owners

who keep them in repair; and practically all are used solely as places of residence.

Independence Boulevard extends east and west. It is paralleled by Sixth Street, a block south. Both streets are intersected by Prospect Avenue, then a block east of that by Chestnut Avenue, and a block still further east by Gladstone Avenue. The block between Prospect and Chestnut on the north side of Independence Boulevard, is bisected north and south by Montgall Avenue and the block next east of that by Bellefontaine Avenue. A plat offered in connection with the testimony of witnesses discloses this general situation with reference to the territory comprising a block north and a block and a half south of Independence Boulevard and extending from Prospect Avenue on the west to and including Gladstone Avenue on the east. There are a group of stores at the southeast corner of Independence Boulevard and Prospect Avenue, and from thence on south past Sixth Street all the buildings on the east side of Prospect are devoted to commercial uses; there is an oil filling station and a grocery store at the southeast corner of Independence and Chestnut; an imposing stone church edifice at the southwest corner of Independence and Gladstone; a school on the north side of Independence near Gladstone; an old residence used for a millinery school at the northeast corner of Independence and Montgall; and an oil filling station on the northeast corner of Independence and Prospect. There are also apartment buildings on the northeast corner of Independence and Chestnut, housing some thirty-two families. The remainder of the territory, with the exception of a vacant space here and there, is occupied by residences used for residential purposes, approximating one hundred in number. Those on Independence Boulevard are commodious structures, with spacious lawns; those on the other streets are smaller and built closer together; Sixth Street especially is compactly built up.

The buildings from which defendants purpose to conduct an undertaking business is located on a lot hav-

304 Mo. Sup.—15.

ing a frontage of fifty feet on Independence Boulevard and extending back two hundred and fifty feet to Sixth Street. The house sets back a short distance from the boulevard; in its rear and much nearer Sixth Street there is a garage. A driveway runs along near the west line of the property from one street to the other. A room on the first floor on the west side of the residence building is to be used as an embalming room; the parlors, for the holding of funerals; and the garage, the place for keeping a hearse. According to the testimony of Emily Ketterlin the business is to be her sole enterprise; she expects to conduct it along the lines generally followed by undertakers; whenever called, whether day or night, she will go with her hearse, which she intends to use as a dead wagon, and get dead bodies—at homes, hospitals, morgues or wherever they may be, regardless of whether they are of persons who have died from disease or casualty and regardless of the condition or state of decomposition in which they may be—bring them to her place of business, and there wash, embalm and otherwise prepare them for burial.

The property of plaintiff, Mrs. Niles, which she owns and in which she lives with her family, joins the Ketterlin property on the west. Her house fronts Sixth Street it is ninety-two feet from the Ketterlin house, but just a few feet from the driveway and garage heretofore mentioned, the latter being almost under her bedroom windows. The property of plaintiffs, Tureman, lies next to that of the Ketterlins on the east—the houses are about fifty-five feet apart. The Tureman house is a large two-story brick occupied by tenants, a retired minister and his wife, who conduct a boarding house there. Mrs. King, another plaintiff, owns a substantial house where she and her family live just across the street from the Ketterlin house and almost directly in front of it. The plaintiffs, Byers and Long, live in their respective residences which are located side by side on the south side of Independence Boulevard in the block next east of

that in which the Ketterlin property is situated. And plaintiff Smart lives in the house which he owns at the northeast corner of Independence Boulevard and Gladstone Avenue. The estimated values of these homes owned by plaintiffs, Tureman, Byers, Long and Smart, range from $30,000 to $50,000.

A great deal of testimony, both expert and lay, was heard with reference to plaintiffs' contentions that there would be great danger from infectious and communicable diseases from the bodies of persons dying therefrom and brought to defendant's establishment to be prepared for burial, and that the air of the immediate neighborhood would be permeated with disagreeable and noxious odors. Without setting it out it is sufficient to say that as a whole it shows quite conclusively that while the communication of disease and the emission of noisome odors from an undertaking establishment in which proper methods of sanitation are employed are possible, the probabilities of such eventualities are extremely remote. On the other hand there was evidence equally conclusive that constant reminders of death, such as are furnished by the presence of an undertaking establishment and its visible activities, have a depressing effect on the mind of the average person, weakening his physical resistance and rendering him more susceptible to contagion and disease; and that the values of homes in a residence district, both sales and rental, immediately depreciate whenever an undertaking establishment makes its appearance therein, because there is such a general aversion to a continuing atmosphere of death and mourning that people will not live in it if they can avoid it. Other matters of evidence will be referred to in the course of the opinion.

The trial court found the issues for plaintiffs. From its judgment granting the relief prayed by them defendants prosecute this appeal.

Respondents maintain here, as they did in the court below, two general propositions: (1) The operation

of an undertaking establishment at No. 2657 Independence Boulevard would constitute a private nuisance; and (2) it would violate a valid city ordinance.

I.   An undertaking establishment is not a nuisance *per se*.  The business of preparing dead bodies for burial is not only lawful but indispensable.  It may become a nuisance, however, from the manner in which it is conducted or because of the place at which it is maintained, and it is very generally held to be such when it intrudes itself into a strictly residential district.  [Beisel v. Crosby, 178 N. W. (Neb.) 272; Densmore v. Evergreen Camp, 112 Pac. (Wash.) 255; Saier v. Joy, 198 Mich. 295; Meagher v. Kessler, 179 N. W. (Minn.) 732; Osborn v. City of Shreveport, 143 La. 932; Goodrich v. Starett, 184 Pac. (Wash.) 220; Cunningham v. Miller, 189 N. W. (Wis.) 531.]  The essential ground of such holding is that the maintenance of an undertaking establishment in a residence district tends to destroy the comfort, the well being, and the property rights of the owners of homes therein.  It is elaborated upon by the Supreme Court of Michigan in Saier v. Joy, supra, a typical case, as follows:

*Nuisance.*

"We think it requires no deep research in psychology to reach the conclusion that a constant reminder of death has a depressing influence upon the normal person.  Cheerful surroundings are conductive to recovery for one suffering from disease, and cheerful surroundings are conducive to the maintenance of vigorous health in the normal person.  Mental depression, horror and dread lower vitality, rendering one more susceptible to disease, and reduce the power of resistance.  There is an abundance of testimony in this record confirmatory of this, and it is a matter of common knowledge.  The constant going and coming of the hearse; the not infrequent taking in and out of dead bodies; the occasional funeral with its mourners and funeral airs, held in the part of the house designed for a chapel; the unknown dead in the morgue, and the visits of relatives seeking

to identify them; the thought of autopsies, of embalming; the dread, or horror, or thought, that the dead are or may be lying in the house next door, a morgue; the dread of communicable disease, not well founded, as we have seen, but nevertheless present in the mind of the normal layman—all of these are conducive to depression of the normal person; each of these is a constant reminder of mortality. These constant reminders, this depression of mind, deprive the home of that comfort and repose to which its owner is entitled."

And in Densmore v. Evergreen. Camp, supra, it is said:

"For in this age, when population is becoming more and more congested in the cities, it would be manifestly unfair to grant injunctive relief only in those cases where the object attacked was a nuisance *per se,* when other circumstances or conditions intervene which might tend to destroy the repose and comfort of a part of a city or town given over to homes. In this case, as in that, the element of comfort and repose in the enjoyment of the home becomes an essential element of our inquiry; for it is not only shown by the evidence, but it may be accepted as within the common knowledge of man, that the immediate presence of those mute reminders of mortality, the hearse, the chapel, the taking in and carrying out of bodies, the knowledge that within a few feet of the windows of one's dwelling house, where the family sleep and eat and spend their leisure hours, autopsies are going on, that the dead are there, cannot help but have a depressing effect upon the mind of the average person, weakening, as the testimony shows, his physical resistance, and rendering him more susceptible to contagion and disease."

The following from Ross v. Butler, 19 N. J. Eq. 294, is a more general statement of the applicatory principle:

"The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over-refined per-

son. But, on the other hand, it does not allow any one, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business, carried on in his vicinity. The maxim, *sic utere tuo ut alienum non laedas,* expresses the well-established doctrine of the law.''

Appellants, while conceding' the soundness of the general doctrine that the maintenance of an undertaking establishment in a residence district of a city constitutes a private nuisance, insist that the district in which they propose to set up their business is not a residence district within its purview. It is true that the district has entered upon a period of transition; no new homes are being built and business is entering here and there. Notwithstanding, it is still essentially residential in character. And on principle there can be no valid reason why its inhabitants are not entitled to the same protection in the enjoyment of their homes as that accorded home owners in residence districts generally. An undertaking establishment stands on a different footing from that of the occasional corner grocery and oil-filling station which have made their appearances there. The latter may offend the aesthetic sense of those living in their proximity; the former would destroy in an essential respect the comfort and repose of their homes.

II. The ordinance prohibits the location or operation of an undertaking establishment within one hundred feet of any building used exclusively for residence purposes and provides a penalty of from one to five hundred dollars for its violation. Counsel on both

Ordinance.

sides assume that if it is a valid police regulation its violation affords a basis for injunctive relief to one especially injured thereby. Appellants, however, insist that the ordinance is void for the reasons set out in their answer. The determination of those questions is not necessary to a disposition of the case and for that reason we decline to consider them. The constitution-

ality of the ordinance can be more appropriately passed on when a case is presented in which asserted constitutional rights are jeopardized by its provisions.

III. Whether the establishment of an undertaking business at 2657 Independence Boulevard would impair the values of plaintiffs' residence properties was a contested issue in the case. Plaintiffs' evidence tended to show that if the relief they sought was denied them their . financial loss, and that of several of them individually. would greatly exceed in value the sum of $7500. There is no question therefore but that we have jurisdiction of this appeal. [State ex rel. v. Reynolds, 256 Mo. 710, and cases cited.]

For the reasons indicated in the first paragraph of this opinion the judgment of the trial court is affirmed. All concur.