MARY V. RHODES, RESPONDENT, v. A. MOLL GROCER COMPANY, A CORPORATION, KURT V. MOLL AND RENE N. MOLL, APPELLANTS. —95 S. W. (2d) 837.

St. Louis Court of Appeals. Opinion filed July 7, 1936.

Motion for Rehearing Overruled July 20, 1936.

*Allen, Moser & Marsalek* and *Wm. H. Allen* for respondent.

*Geo. A. McDonald* for appellants.

754

HOSTETTER, P. J.—This is a suit in equity which was instituted in the Circuit Court of the City of St. Louis on December 23, 1932, by plaintiff, Mary V. Rhodes, who owns a residence property, being Lot 31 in Clemens Place of City Block 4548, known and numbered as 5658 Enright Avenue, in the City of St. Louis.

Enright Avenue is an east and west street and plaintiff's residence is located in the north half of the block and fronts north on Enright Avenue, as do all the other houses situated in the north half of the same block. Delmar Avenue, also an east and west street, parallels Enright Avenue immediately on the south. An alley runs east and

west through the center of said block in which plaintiff's residence is located.

One of the defendants, A. Moll Grocer Company, is a Missouri corporation, having its principal office and place of business at 5659 Delmar Boulevard in the City of St. Louis, where it is engaged in the selling of groceries and meats. It fronts south on Delmar in the south half of the same block in which plaintiff's residence is located; other houses in the south half of the same block likewise front south on Delmar, so that the south half of the block is composed of business houses and the north half is composed of residences, the alley separating the residential portion from the business portion of the block.

Plaintiff, by her petition, sought to enjoin and restrain the defendant corporation and the two individuals, Kurt V. Moll and Rene N. Moll, from using and operating Lot No. 30 in Clemens Place of City Block 4548, known and numbered as 5664 Enright Avenue in St. Louis, Missouri, and owned by the two individual defendants, in the north half of said block and immediately west of and adjacent to plaintiff's property, as a parking lot and open garage for the use of customers of the A. Moll Grocer Company.

The cause was tried before the court on the 20th day of February, 1933, and taken under advisement until the 11th day of October, 1933, on which last mentioned date the court entered a decree permanently enjoining defendants as prayed for by plaintiff in her petition, and, after an unavailing motion for a new trial defendants bring the cause to this court by appeal for review.

The plaintiff has filed a motion in this court to dismiss the appeal on account of alleged insufficiencies in the abstract and also a motion to strike out appellants' amended abstract. We overrule both of these motions without discussion and proceed to consider the case on its merits.

The facts of the case are substantially as follows:

Plaintiff's property has a frontage of sixty feet on Enright Avenue by a depth southwardly of 185 feet to the alley, being the place of residence of herself and family. The lot owned by the individuals, Kurt V. Moll and Rene N. Moll, his wife, was purchased by them in March, 1930, for $12,000, it having a frontage of sixty feet on Enright Avenue by depth of 177½ feet southwardly to the alley. At the time of their purchase of said lot it had a two story brick building on it, which was very much out of repair and unoccupied, but which, since its purchase, has been renovated and the lot has been smoothed off and covered with cinders.

Plaintiff's lot and her residence thereon is located somewhere near the middle of the block, while the lot purchased by Kurt V. Moll and Rene N. Moll, his wife, is, as stated, located immediately west of plaintiff's residence property, the residences on both lots

fronting north on Enright. The line between plaintiff's property and the property purchased by the Molls runs within three to five feet alongside of plaintiff's residence. Across the alley and immediately south of plaintiff's lot, and facing out on Delmar Boulevard, is the building occupied by the corporation defendant, A. Moll Grocer Company, whose president is defendant, Kurt V. Moll.

The city block where the property in question is located, is bounded on the north by Enright Avenue, on the east by Clara Avenue, on the south by Delmar Boulevard and on the west by Goodfellow Avenue. The alley which runs through the middle of the block east and west had no established outlet for its entire length of approximately 600 feet, except at its intersection on either end with Clara and Goodfellow Avenues. The testimony shows that it is a much used alley largely because of the business concerns located on the south side of it, and fronting on Delmar Boulevard. Most of the business concerns thus fronting on Delmar use the alley as a means of ingress and egress for their trucks to be loaded and unloaded in the rear and there are also some private garages on the north side of the alley and opening out into it, belonging to residents whose homes are located in the north half of the block.

Immediately west of the A. Moll Grocer Company's store is a Woolworth store and there is also a Kroger store and an A. & P. store in the south half of the block, all fronting on Delmar. There is a space paved with concrete in the immediate rear of the Moll and Woolworth stores, and extending north to the alley, which can accommodate a maximum of thirty-five or forty cars when carefully parked. Places for parking cars were very difficult to find in the immediate section where these business houses fronting on Delmar are located. After the purchase by the Molls of their property in the north half of the block and after the same was renovated as stated, the defendants put one of their own employees in the residence at a nominal rental, under an arrangement whereby the employe was obligated to keep the house painted and papered and make minor repairs from time to time and take care of the lawn in front of the house on Enright Avenue.

The defendants, under a permit obtained from the city authorities, constructed a nine foot concrete driveway connecting the alley and Enright Avenue along the extreme east side of the Moll lot, which was necessarily closely adjacent to plaintiff's residence, which, as stated, stands some three to five feet from the property line. It is this lot which plaintiff seeks to have defendants restrained from using as a parking lot.

In April, 1932, plaintiff caused a complaint to be filed against the A. Moll Grocer Company and Kurt V. Moll in the police court charging them with the violation of a city ordinance prohibiting the maintenance of a parking lot in a multiple dwelling district,

but, upon a trial the court rendered a judgment in favor of the defendants.

It is charged in the petition that the defendants used this lot for the parking of automobiles by the general public and especially by customers of the A. Moll Grocer Company and that the use of the same for such purposes constitute in law and fact a nuisance to plaintiff and her family in this, that the parking of the automobiles on said lot has created on and around the premises large quantities of dirt, dust, gasoline fumes, oil, gas and poisonous vapors which have been and are scattered over the neighborhood and on into and through plaintiff's house; that the maintenance of said parking place on said lot has greatly and unreasonably destroyed and depreciated and continued to destroy and depreciate the market value of the property of plaintiff; that the noise, odors, mist, dust, and dirt emanating from the operation of automobiles over and on said driveway have been and are so great as to unduly disturb and destroy the comfort, quietude and peaceful enjoyment of plaintiff and her household and to render her home untenantable as a place of abode; that plaintiff's residence is provided with windows and doors through which such unhealthy and offensive fumes, odors, mists, dust and dirt have been and are communicated to her and to the members of her household; that for many months of the year it is essential to the comfort and health of plaintiff and her family that such windows and doors remain open; that she is without adequate remedy at law and that the nuisances complained of are continuing in their nature and have resulted and will continue to result in irreparable loss and injury to plaintiff; that in numerous instances the persons using said parking place, including customers of A. Moll Grocer Company, have parked their automobiles upon the land and premises of the plaintiff and have driven their automobiles upon and over the land and premises of the plaintiff.

The defendants, in their return to the order issued by the court to show cause why an injunction should not be granted against them as prayed in the petition, admitted the incorporation of the A. Moll Grocer Company; admitted the ownership of the residence property adjacent to plaintiff's property; admitted the construction of the driveway nine feet in width along the side of plaintiff's property; denied that they ever operated a public driveway on said nine foot strip; denied that they had ever permitted said lot to be used for the parking of automobiles either for the general public or by the customers of the A. Moll Grocer Company or for the benefit of the A. Moll Grocer Company; denied that any large quantities of dirt, dust, gasoline fumes, oil, gas and poisonous vapors have been or ever were scattered over the neighborhood and into plaintiff's home; denied that plaintiff's home is located in a residential neighborhood; denied that plaintiff's property was ever greatly or

unreasonably depreciated in value; denied that the operations of automobiles over said driveway and the parking of cars on said lot is or has been so great as to unduly disturb the comfort, quietude and peaceful enjoyment of plaintiff and the members of her household; denied the jurisdiction of the court to issue any kind of injunction and averred that plaintiff has not suffered any damage by reason of the acts of which she complains, which are different in kind or degree from those suffered by other residents and inhabitants of the neighborhood in which plaintiff resides. This return of the defendants was taken as their answer and was so treated and regarded by all parties.

The testimony introduced by and on behalf of plaintiff tended to support the allegations in her petition. It was shown that her property was damaged to the extent of forty to fifty per cent in value; that the driveway opening out from the lot on Enright Avenue was dangerous to pedestrians and particularly to children playing on the street or passing along on the sidewalk. It was shown by the testimony that one child had been struck by an automobile at such outlet and injured; that plaintiff's property was kept vacant for many months for the reason that people wouldn't rent it with a parking lot there alongside it; that formerly when rented out, the plaintiff usually got from $100 to $125 per month as rent, but that with the parking lot adjacent thereto it could not be rented for $60 per month. It was shown by the testimony that by actual count at one time there were sixty-two cars parked in the lot adjacent to plaintiff's residence; that as many as thirteen cars were parked between the plaintiff's house and the house on the Moll lot adjacent thereto; that on days before holidays there were from 500 to 800 cars parked in the lot in controversy and 200 or 300 on other days; that on the 24th of December, by actual count there were seventy-five cars which passed in and out on the concrete driveway in forty minutes; that ordinarily the stores close at six o'clock but before a holiday like Christmas they keep open until around nine o'clock; that the Moll employees together with other employees started coming in about four or five o'clock in the morning and they go through defendants' lot adjacent to plaintiff's property blowing their horns; that when the public started coming in the exhaust of gas and the dust and dirt makes it impossible to keep the windows of plaintiff's residence open on the west side of the house; that frequently plaintiff's husband has gone out and assisted in relieving jams and getting cars off their own premises, particularly where they intrude and mire down in rainy weather; that the exhaust of the gas is continuous all day long and that from 500 to 800 cars a day coming in and having use of the place makes it a very dangerous public highway; that these conditions affect the peaceful and healthful enjoyment of plaintiff's home; that the amount of gas that comes

continually from the cars coming in and going out and being moved about on the lot is a very pernicious thing and that those who live in plaintiff's property have to bear with the smell of it all day long; that four or five years prior to the use of the Moll lot as a parking place plaintiff's property could have been sold for $18,000 to $20,000; that *bona fide* offers had been made at those figures and refused; that shortly before the Moll lot was used as a parking lot plaintiff had been offered $14,000 for the property and refused it. She testified that she wanted to sell the house because of the establishment of the parking lot adjacent to it and after enduring it for awhile she and her family moved out of it hoping that she would be able to sell the house or rent it, but was unable to do either, and, consequently, they were compelled to move back into the house again.

It was further shown in evidence that A. Moll Grocer Company inserted numerous advertisements in newspapers in exploiting their wares, which included the following sentence: "Plenty of parking space in rear of building." It was also shown that employees of the A. Moll Grocer Company were on the lot in controversy attending to and adjusting the parking of cars thereon; that the lot was used for the parking of the A. Moll Grocer Company's trucks and by automobiles of its customers, employees and other persons; that this took place day and night accompanied frequently by the tooting of horns and by noises from the operations of trucks and automobiles while on the lot and while passing to and from same along said driveway; that the said lot was frequently crowded and jammed with automobiles making it necessary for employees of the A. Moll Grocer Company to assist in the parking thereof and to direct traffic therein, which was frequently accompanied by noise, clamor and disputes between drivers; that plaintiff's premises and home were permeated with automobile fumes and dust, causing her and her family great annoyance and discomfort, making it necessary to keep the windows closed in warm weather and seriously interfering with the use and enjoyment of the property and jeopardizing the health of the occupants of the home; that oftimes cars and trucks would be driven over the property line onto her property.

It was further shown in evidence that plaintiff's residence was located in a highly respectable residential area.

A futile effort was made by defendants to show that there were some business houses located in that neighborhood on Enright Avenue, such as a beauty parlor and a pickle factory, but without success.

We are clearly of the opinion that plaintiff is entitled to the relief prayed for in her petition and which the trial court granted her. The testimony clearly and conclusively shows that her property is located in a respectable, high class, residential district on Enright Avenue.

We recognize the doctrine that the owner of property has the

right to exercise exclusive dominion over it and to devote it to such lawful uses as will best subserve his private and personal interests and purposes so long as he does not unduly and unlawfully infringe on the corresponding and equal legal rights of his neighbor in the enjoyment and use of his property in the lawful, usual, customary, and reasonable manner, to which such property is adaptable.

When an owner of property puts his property to such use as to violate the legal rights of his neighbors by creating a nuisance which tends to destroy the value of the neighbor's property, endanger his neighbor's health and detract from the enjoyment of a home, as in the instant case, we think the border line between lawful and unlawful use has been crossed.

Defendants urge, however, that plaintiff has slept on her rights on account of the lapse of time from the beginning of the use of the lot for parking purposes until the filing of this suit. We fail to see any merit in this contention.

Plaintiff's objections to such use of defendant's lot was manifest from the time its first started. The testimony shows that her husband had some heated arguments with Mr. Moll about allowing cars to come over the property line onto plaintiff's side, particularly when it was rainy weather and they would mire down and it took all hands to get them out. And in April, 1932, plaintiff caused the A. Moll Grocer Company and its President to be hailed into the police court to answer a charge of maintaining a parking lot in a multiple dwelling district in violation of an ordinance, which clearly showed that she was not acquiescing in the continuing wrong which defendants were subjecting her to.

We find no element of estoppel in plaintiff's conduct which would bar from claiming her rights in the instant case. The stipulations which were entered into between plaintiff and defendants after the institution of this suit were not designed to, and did not constitute any element of waiver of her right to recover in the instant case; neither did the manner in which the title was held affect her rights in the instant case.

Defendants contend that there is no such thing as an "open air garage" referred to by plaintiff in her petition, in characterizing the use defendants were making of the lot. They assert that the word "garage" means "an enclosed, roofed shelter for automobiles," the same as the stable was the shelter for horses. Defendants' definition does not tally with Webster's New International Dictionary, which defines the word "garage" to be simply "a place for housing automobiles," whether the roof was a man made one, or the canopy of heaven, seems to be immaterial under the latter definition.

However, this difference as to names is immaterial, because the

poet has truthfully said "A rose would smell as sweet by any other name." Another poet, in speaking of the lasting qualities of pleasant odors, said this:

"You may break, you may shatter the vase if you will,
"But the scent of the roses will cling round it still."

If this be true as to pleasing odors, might not the same lasting qualities be attributed to the ill smelling, noxious odors emanating from the exhaust of automobiles, whether they be in an "open air garage" or in a parking space?

Defendants also seek to avoid liability by the claim that they made no charge to those parking on their lot, and therefore, in law it was not a parking lot. Without conceding that it is necessary to charge and receive money for parking in order to constitute the place a "parking lot," we do say that when defendants advertised and permitted so-called free parking, they did receive a remuneration in increased trade over competitors who were not in a position to furnish free parking. Besides, whether free parking or pay parking, the damage done to the plaintiff was not in the least lessened.

The attitude of this Court on issues similar to those involved in the instant case is disclosed in Deevers v. Lando et al., 220 Mo. App. 50, 285 S. W. 746, in an able and illuminating opinion by Judge BECKER, wherein the subject under review was the maintenance and operation of a barbecue stand in a residential neighborhood.

The following cases were approvingly cited therein, viz: Tureman v. Ketterlin, 304 Mo. 221, 263 S. W. 202; Craven v. Rodenhauser, 21 Atl. Rep. 774; Bielman v. Rys. Co., 50 Mo. App. 151; Ross v. Butler, 19 N. J. Eq. Rep. 294; Wood on Nuisances (3 Ed.), secs. 10 and 561; Smiths v. McConathy, 11 Mo. 517; Baker v. McDaniel, 178 Mo. 447, 77 S. W. 531.

The following is a quotation from the Deevers' case, *supra*, viz:

"The corruption of the atmosphere by the exercise of any trade, or by any use of property that impregnates it with noisome stenches, has ever been regarded as among the worst class of nuisances, and the books are full of cases in which any use of a property producing these results has been regarded as noxious and a nuisance, whether arising from the exercise of a trade or business, or from the ordinary or even necessary uses of property. [Wood, Nuisances (3 Ed.) sec. 561.] In section 10, the same author says: 'No man is at liberty to use his own property without reference to the health, comfort or reasonable enjoyment of like public or private rights by others. Every man gives up something of his absolute right of dominion and use of his own, to be regulated or restrained by law, so that others may not be hurt or hindered unreasonably in the use or enjoyment of their property. This is the fundamental principle of

all regulated civil communities and without it society could hardly exist, except by the law of the strongest. This illegal, unreasonable and unjustifiable use to the injury of another, or of the public, the law denominates a nuisance.'

"Concede that the operation of a barbecue stand is not a nuisance *per se*. However, when the prosecuting of a barbecue stand, though a business of itself lawful, is conducted in a neighborhood given over wholly to residences and renders the enjoyment of it materially uncomfortable by the smoke, noise or offensive odors produced by it, the carrying on of such business in that locality may be held a nuisance and restrained by injunction. See Ross v. Butler, 19 N. J. Eq. Rep. 294, where an exhaustive review of the principal cases is to be found.

" 'A man's home is his castle, and he should be as much entitled to protection against foul stenches, loud and unusual noises, and the torment of flies which cause physical discomfort and suffering as against the armed invader who would plunder and destroy. The difference is one of degree only.' [McCracken v. Swift & Co. (Mo. App.), 250 S. W. 953.]"

Mitchell v. Guaranty Corporation, 283 Pa. 361, 129 Atl. 114, holds that a public garage is not a nuisance *per se,* but becomes such in fact when conducted in residential neighborhood.

George v. Goodovich, 288 Pa. 48, 135 Atl. 719, 50 A. L. R. 105, holds that even a private garage consisting of two one story buildings of ten stalls each facing each other with fourteen and one-half foot driveway between, when located in a residential neighborhood is a "nuisance" in view of noises, danger to pedestrians, congestion of traffic, fumes and depreciated property values.

Sullivan v. American Mfg. Co., 33 Fed. (2d) 690, holds that a bagging factory which threw off fumes, vapors and great quantities of dust and dirt on surrounding property and depreciated it in value is a nuisance.

Tureman v. Ketterlin, 304 Mo. 221, 263 S. W. 202, holds that maintenance of an undertaking establishment in a residential portion of a city is a private nuisance.

Streett v. Marshall, 316 Mo. 698, 291 S. W. 494, holds that a funeral home in a residential district in a city is a nuisance and defendants will be enjoined from maintaining it; also that it is not necessary for a funeral home operated in a residential district to constitute a nuisance, that its character be such as to directly affect the health or grossly offend the physical senses. The following is quoted approvingly in Streett v. Marshall, *supra,* viz:

" 'It is well settled that the injury (resulting from the use of a property which is alleged to constitute a nuisance) must not be fanciful or imaginary; nor such as to result in a trifling annoyance, inconvenience or discomfort, which may affect those who possess too

sensitive a nature or too fastidious a taste. The law is applied only to the normal man—the man of ordinary habits and ordinary sensibilities—it does not take cognizance of insensible and unsubstantial discomforts and inconveniences' [20 R. C. L. 382.] `

" 'The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste and disturb the nerves of a fastidious or over-refined person. But, on the other hand, it does not allow any one, whatever his circumstances or condition may be, to be driven from his home or to be compelled to live in its in positive discomfort, although caused by a lawful and useful business carried on in his vicinity. The maxim, *sic utere tuo ut alienum non laedas*, expresses the well established doctrine of the law.' [Ross v. Butler, 19 N. J. Eq. 294, 97 Am. Dec. 654.]" See also Lademan v. Lamb Const. Co. (Mo. App.), 297 S. W. 184; Greene v. Spinning (Mo. App.), 48 S. W. (2d) 51; Mason v. Deitering, 132 Mo. App. 26, 111 S. W. 862; Atterbury v. West, 139 Mo. App. 180, 122 S. W. 1106; Shelton v. Lentz, 191 Mo. App. 699, 178 S. W. 243; Schoen v. Kansas City, 65 Mo. App. 134; Scheurich v. Empire Dist. Elec. Co. (Mo.), 188 S. W. 114.]

The violation of the sanctity of the home augments the moral turpitude involved in the maintenance of the nuisance complained of in the instant case. Poets and bards of all ages and climes have sung in praise of the home. Orators and statesmen have descanted on its importance and its sanctity. Humans from the era of the cave man to our present day civilization have ever been ready to fight in defense of the home.

"The house of every one is to him as his castle, and fortress, as well for his defense against injury and violence, as for his repose." Sir Edward Coke—Reports, Semaynes' Case, Vol. III, Pt. V., p. 185

"His native home deep imag'd in his soul." Homer—Odyssey, Book XII, L. 38, Pope's translation.

"Our law calleth a man's house, his castle, meaning that he may defend himself therein." Lombard—Eiven II, VII, 257 (1588).

"Mid pleasures and palaces though we may roam,

"Be it ever so humble, there's no place like home." John Howard Payne—Home Sweet Home.

"The poorest man may in his cottage bid defiance to all the force of the crown. It may be frail, its roof may shake; the storms may enter—the rain may enter—but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement." William Pitt (Earl of Chatam)—Speech on the Excise Bill.

" 'Tis sweet to hear the watch dog's honest bark,

"Bay deep mouthed welcome as we draw near home,

" 'Tis sweet to know there is an eye will mark,

"Our coming, and look brighter when we come." Lord Byron—Don Juan.

It follows that the judgment of the trial court should be affirmed, and, it is so ordered. *McCullen, J.,* concurs. *Becker, J.,* concurs in result.