Angelina **MASCOLINO**, Appellant,

v.

**NOLAND & COWDEN ENTERPRISES, INC.**, Appellee.

Court of Appeals of Kentucky.

June 11, 1965.

Frank S. Ginocchio, Lexington, for appellant.

Brock & Brock, Lexington, for appellee.

PALMORE, Judge.

Appellant owns and resides on Lot 39 of Ransom Subdivision in the City of Lex-

ington. She appeals from a summary judgment dismissing her complaint for injunctive relief against appellee's use of neighboring Lots 37 and 38 as a parking area for a new office building.

Ransom Subdivision is bounded on the east by Main Street and on the west by High Street. One street, Ransom Avenue, runs through it from Main to High. At the east and west ends of the subdivision the lots face on Main and High Streets, respectively. Those located on Ransom Avenue between the rear lines of the lots fronting Main and High face on Ransom Avenue.

The defendant company owns Lots 32, 33, 34, 35, 37 and 38. Lots 32 to 35, inclusive, face the east side of High Street at the southeast corner of High and Ransom. Lots 37, 38 and 39, in that order, are located on the south side of Ransom immediately to the east or rear of Lots 32 to 35. In other words, Lots 37 and 38, which are those immediately in issue, lie between the lots facing High and Mrs. Mascolino's Lot 39 which faces Ransom.

The subdivision plat was recorded in 1889. No restrictions were indicated on or filed with it. Evidently no effort was made to market the lots until 1919, when the subdivider's executor had them sold at public auction. Lots 37, 38 and 39 originally were conveyed to separate purchasers, and each of the three deeds contained the following restrictions (emphasis added):

"It is hereby covenanted and agreed between the parties hereto and their heirs and assigns that the residence erected on said lot shall front on Ransom Avenue, and the front of said residence shall be set back a distance of not less than 25 feet from Ransom Avenue and that the first story of any residence erected thereon shall be constructed of brick, stone, concrete or stucco, and that said building shall cost not less than $3,000.00.

"It is further covenanted and agreed between the parties hereto, their heirs, successors and assigns, that *said residence shall not be placed nearer than 3 feet to the line of said lot* and that no front fence shall be built on said lot and no fence to run nearer the street than to the front end of the house and that *no stable or garage shall be erected within 75 feet of Ransom Avenue * * ** and that the party of the second part agrees to insert all of the restrictions and covenants contained in this deed in any deed or deeds that they may make to said property."

There were no restrictions on Lots 32, 33, 34 and 35, facing High Street.

Since the sale in 1919 some 30 or more dwellings have been constructed on Ransom Avenue and are still being used as such, though defendant company has now razed the houses on Lots 37 and 38. Also since 1919 a north-south street formerly called Vine Street but now known as Central Avenue has been extended across Ransom Avenue (at a point nearer to Main than to High), and in the case of Goodwin Bros. v. Combs Lumber Co., 275 Ky. 114, 120 S.W.2d 1024 (1938), this court held that even if the aforementioned restrictions were construed as prohibiting use of the restricted lots for business purposes, nevertheless the character of the area between Main and Central had so changed that the restrictions were no longer applicable in that particular segment or block of Ransom Avenue.

The chancellor granted a summary judgment in the instant case following the reception of affidavits and considerable evidence in connection with plaintiff's motion for a temporary injunction. It was his conclusion "that the character of the block in question is so changed by the influx of business and commercial enterprises that it has lost its character as a residential neighborhood and is now essentially a commercial territory," and that under the same

theory as the Goodwin Bros. opinion the restrictions are not enforceable.

Defendant company has constructed a two-story office building facing High Street and has prepared the remainder of its property as parking space to accommodate some 100 vehicles. It is alleged that the building is partially on Lot 37, but appellant does not now contend that this particular circumstance affords a ground for relief, nor does she contend that the property cannot be used for business purposes. Her case is pitched on the proposition that the construction of a parking lot within three feet of her property line and within 75 feet of Ransom Avenue violates the italicized portions of the restrictive provisions as above quoted in this opinion.

Rhodes v. A. Moll Grocer Co., 231 Mo. App. 751, 95 S.W.2d 837 (1936), is cited in support of the argument that a parking lot is a "garage." That was a nuisance case in which the complaint described the lot as an "open-air garage" and the defendant evidently undertook to maintain that the evidence failed to support that allegation. Quoting a dictionary definition of a garage as "a place for housing automobiles," the court held that "whether the roof was a man-made one, or the canopy of heaven," was immaterial. Within the context of that particular litigation we are not disposed to criticise this conclusion. The case was focused on the existence of conditions amounting to a nuisance rather than the intended meaning of a word or words used in a deed. But in this case we are concerned with what a subdivider meant by providing that no "garage" be erected within 75 feet of the street and that no "residence" be placed nearer than three feet to the lot line.

■ "We must seek the intention of the grantor from the language used, considered in light of such factors as the general scheme of the subdivision. We may not substitute what the grantor may have intended to say for the plain import of what he said." McMahan v. Hunsinger, Ky., 375 S.W.2d 820, 822 (1964).

■ It is beyond doubt that when the lots were sold in 1919 it was contemplated that the ones facing Ransom Avenue would be used for the construction of homes. Within that scheme of things it is our opinion that the words "garage" and "residence" must be given their usual and customary meaning.

■ "The general term 'garage,' which is appropriated from the French language and means 'keeping under cover' or 'a place for keeping' of wagons as well as automobiles, is employed in English to mean 'a place where a motor vehicle is housed and cared for.'" 24 Am.Jur. 481 (Garages, Parking Stations, and Liveries, § 2). Our conclusion is that the term "garage" when used with reference to residential property means a covered structure and does not include an unenclosed and uncovered parking area. Were it otherwise, the many driveways we know to exist on residential lots that do not have garages, and which are customarily used for off-street parking, would be "garages."

■ We are of the further opinion that the word "residence" as used in these deeds was intended to mean a dwelling house. The provision that "said residence shall not be placed nearer than three feet to the line of said lot" (emphasis added) obviously refers to the "residence" mentioned in the preceding paragraph, where it also is called "said building." By no feat of semantics can this be taken to embrace a mere parking area.

■ It is stated in the findings of the trial court that "plaintiff waived that part of the complaint which asked that defendant be enjoined from erecting any building which did not face on Ransom Avenue and that part of the complaint which sought to enjoin defendant from using Lots 37 and 38 for business purposes." It is therefore unnecessary for us to deter-

mine whether the restrictions impliedly exclude a business use, and unnecessary also to reach the question of whether the character of the area has changed from residential to commercial. The basis on which our decision rests is that the construction of an open parking lot does not violate the set-back and side-line restrictions on which the plaintiff relies in this appeal. There being no material issue of fact in that respect, the summary judgment was proper and correct.

The judgment is affirmed.